T.C. Memo. 2002-10

UNITED STATES TAX COURT

JAMES EDWARD CRAWFORD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7803-00.                    Filed January 10, 2002.

James Edward Crawford, pro se.

<u>Stephen R. Takeuchi</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Chief Special
Trial Judge Peter J. Panuthos pursuant to the provisions of
section 7443A(b)(5) in effect when this case commenced, and Rules
180, 181, and 183.  Unless otherwise indicated, section
references are to the Internal Revenue Code as in effect for the
tax year for which petitioner seeks abatement of interest.  All

Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PANUTHOS, Chief Special Trial Judge: On April 7, 2000, respondent issued a notice of final determination denying petitioner's claim to abate interest for tax year 1980. Petitioner challenged the determination by timely filing a petition under section 6404(i) and Rule 281.

The issue for decision is whether respondent abused his discretion in denying petitioner's request for abatement of interest assessed from July 1993, through the present date with respect to petitioner's 1980 taxable year.

FINDINGS OF FACT

The stipulation of facts and the accompanying exhibits are incorporated herein by reference. Petitioner resided in Brandon, Florida, at the time his petition was filed with the Court.

In 1983, petitioner invested in the First Energy Leasing tax shelter (First Energy) and claimed an investment tax credit of $10,000, of which he applied $3,670 to his 1983 tax liability. He carried back $6,330 of the credit to his 1980 tax year for which he filed a Form 1045, Application for Tentative Refund, received by the Cincinnati Service Center on March 20, 1984.

Petitioner was issued a refund of $6,330 plus interest of $183.31 for a total of $6,513.31.

In a letter dated July 17, 1984, the Internal Revenue Service (IRS) notified petitioner that for tax year 1983 First Energy was an abusive tax shelter the deductions from or credits for which "are not allowable".  On November 4, 1986, the IRS sent petitioner's attorney a settlement offer regarding First Energy. After no response was received, the IRS issued a notice of deficiency dated July 13, 1987, determining deficiencies in petitioners' Federal income taxes for 1980 and 1983 in the amounts of $6,330 and $5,717, respectively, and additions to tax for 1980 in the amounts of $316.50 and $1,899 under sections 6653(a) and 6659, respectively.  The underpayment of tax for 1980 was determined to be a substantial underpayment attributable to a tax motivated transaction under section 6621(c).

Petitioner filed a petition with the Court on August 17, 1987, for a redetermination of the deficiencies.  After a timely answer was filed, respondent, on October 15, 1987, sent petitioner's case to the Appeals Office to give petitioner another opportunity to accept the "national" settlement offer. On January 13, 1988, respondent's counsel wrote to petitioner's counsel inquiring "whether you intend to litigate all issues, or only the penalty issues, and whether you will agree to a test case approach."  In a letter dated March 10, 1988, petitioner

indicated that he wanted to litigate all the issues related to First Energy and that he was willing to be bound by a test case.

The following year, in a letter dated January 12, 1989, petitioner's counsel wrote to respondent's counsel expressing a desire to "proceed with the government's settlement offer" and requesting a computation showing the settlement deficiencies.  In a letter dated June 27, 1989, respondent sent to petitioner's counsel copies of a proposed decision, stipulation, and closing agreement together with a computation of tax.  In this proposed settlement, petitioner would agree to a deficiency in tax for 1980 of $6,330.  He would also agree to a deficiency in tax for 1983 of $4,613, net tax payments of $5,717, and an overpayment of $1,104.  The parties would also make certain concessions as to additions to tax and additional amounts to be paid under section 6621(c).

Respondent's counsel wrote to petitioner's counsel in a letter dated October 17, 1989, to inform him that petitioner had contacted respondent's counsel and alleged that he had not received the $6,330 refund for 1980 that he had applied for on Form 1045.  In the letter, respondent's counsel also informed petitioner's counsel that a pretrial conference in unsettled First Energy cases was being scheduled requiring the receipt of any agreed decision before November 3, 1989.  There was no acceptance of the offer.

On July 26, 1990, respondent filed motions to calendar, to change place of trial, and for pretrial conference. The Court subsequently granted respondent's motion for pretrial conference and denied the other two motions.

In response to petitioner's request, respondent's counsel enclosed in a letter sent to him on or about October 22, 1990, a Form 3911, Taxpayer Statement Regarding Refund. The form, used in tracing refund checks, requires the taxpayer to supply certain information certified to be correct, to the best of his knowledge, under penalties of perjury. The form states that the information requested may be provided in a letter. On November 28, 1990, petitioner sent to the Cincinnati Service Center a letter requesting "a photocopy of a refund check I allegedly received in July of 1984" in the amount of $6,330. Petitioner states in the letter that he never received the refund check in the amount of $6,330. The letter does not contain a statement that it is certified to be correct, to the best of his knowledge, under penalties of perjury.

Petitioner's counsel filed a motion to withdraw from his representation of petitioner on December 17, 1990, which motion was subsequently granted.

Petitioner was notified of a change in respondent's settlement position in the First Energy cases in a letter dated

March 20, 1991, and the new settlement was offered to petitioner for acceptance within a period of 4 weeks.

The Court issued an order on April 18, 1991, scheduling petitioner's trial on August 26, 1991, in Chicago, Illinois.  On April 23, 1991, respondent wrote to petitioner, now residing in Florida, requesting informal discovery of documents related to his investment in First Energy as well as answers to a number of questions related to the investment.  The following month, petitioner signed a Form 906, Closing Agreement On Final Determination Covering Specific Matters, that effectively settled the issues in his case.

On June 3, 1991, the Court struck petitioner's case from the August 26, 1991, trial session due to the stipulation of settled issues resolving the First Energy matter.

On or about September 7, 1991, respondent's counsel inquired as to the status of petitioner's request for a trace of his 1980 refund check.  Petitioner replied in a letter dated September 26, 1991, that "My last written request was submitted in November 1990 asking for a photocopy of the check they allegedly sent me on July 18, 1984 for $6513.31.  As of this date I still have not received it."  On November 8, 1991, petitioner's case was forwarded to the Appeals Office for a settlement computation.

Petitioner further replied to respondent's counsel, in a letter dated November 12, 1991, that he was notified that his

First Energy deductions were abusive "BEFORE they allegedly sent me the check in question." He acknowledged receiving a document "indicating that the check was mailed to me on July 18, 1984." But he questioned "why did the IRS send me a refund check on July 18, 1984 after telling me on July 17, 1984 that I was not entitled to that refund?" Petitioner also took the position that just because the check was sent to him and cashed did not mean that he was the one who cashed it. Respondent's counsel advised petitioner in a follow-up letter that the issue of his receipt of the refund check was not an issue triable in his Tax Court case.

On December 16, 1991, the Court granted a motion by respondent's counsel to change place of trial to Tampa, Florida. In a letter dated February 10, 1993, respondent's counsel located in Jacksonville, Florida, requested petitioner's consideration of a proposed stipulation of facts and a request for documents, including petitioner's bank statements for the period July through December 1984. Respondent's counsel sent petitioner a followup request for bank statements on April 2, 1993.

Respondent, on April 6, 1993, sent to the Court a trial memorandum for petitioner's case set on the April 26, 1993, trial calendar in Tampa, Florida. The memorandum frames the issue for trial as whether petitioner received the 1980 refund of $6,330 he claimed on Form 1045, recognizing Naftel v. Commissioner, 85 T.C. 527, 531-532 (1985) as authority for the Court's having

jurisdiction to decide the issue. Petitioner agreed to settle his case. On April 14, 1993, he signed a decision document agreeing to deficiencies of $6,330 for 1980 and $5,717 for 1983, and to certain concessions as to additions to tax and an additional amount under section 6621(c). The decision document also states, consistent with the settlement computation of June 27, 1989, that petitioner has net tax payments of $5,717 for 1983.

On July 26, 1993, petitioner sent a check for $1,567.51 to the IRS for his 1980 tax liability. In response to a letter from petitioner dated February 16, 1994, the Court wrote to him explaining that jurisdiction did not currently exist to recompute the statutory interest to be assessed on his 1980 tax deficiency. Petitioner alleged in his letter to the Court that the amount he was now disputing was "the RE-PAYMENT of money the IRS sent me in error, plus nine (9) years of compounded interest."

In response to petitioner's correspondence to Commissioner Michael P. Dolan, dated November 13, 1997, the Acting District Taxpayer Advocate sent petitioner a letter dated January 7, 1998, attempting to explain petitioner's transcripts of account for 1980 and 1983.

On April 27, 1999, respondent received a Form 843, Claim for Refund and Request for Abatement, filed by petitioner. In an attachment to the form, petitioner states that "The two sources

of the problem are a refund check sent to me in error and a tax credit I received in the amount of $5,717." Later in the attachment he alleges that IRS representatives assured him that if he did not prevail in Tax Court he would get a $5,717 credit deducted from the $6,330 check he had received. "I would then owe the difference between the two amounts plus interest. **I would have returned the $6,330 check had I not been given this assurance.** [Emphasis in original.]" The mistake he further isolates in the attachment is that the IRS sent him the refund check after First Energy was determined to be abusive and then provided him with incorrect information. "This improper information is the source of these interest payments." He requests further that he receive a "refund" of all interest payments made since 1993.

The IRS District Director in Jacksonville, Florida denied petitioner's request for abatement in a letter dated October 25, 1999.

OPINION

Pursuant to section 6404(i),[1] the Tax Court has the authority to review the Commissioner's denial of a taxpayer's request for abatement of interest. The Court may order an

---

[1] Sec. 6404(i) was formerly designated sec. 6404(g) but was redesignated sec. 6404(i) by the Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 743, 745.

abatement where the Commissioner's failure to abate interest was an abuse of discretion. Sec. 6404(i). The taxpayer must demonstrate that the Commissioner, in failing to abate interest, exercised his discretion arbitrarily, capriciously, or without sound basis in law or fact. <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

Petitioner requests abatement of interest pursuant to section 6404(e)(1). Section 6404(e)(1), as applicable to petitioner's 1980 and 1983 tax years,[2] reads as follows:

> Sec. 6404(e). Assessments of interest attributable to errors and delays by Internal Revenue Service.--
>
> (1) In General.--In the case of any assessment of interest on--
>
>> (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>>
>> (B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be

_____

[2] Congress amended sec. 6404(e) in 1996 to permit abatement of interest for "unreasonable" error or delay in performing a "ministerial or managerial" act. Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1457 (1996). That standard, however, applies to tax years beginning after July 30, 1996. TBOR 2 sec. 301(c), 110 Stat. 1457.

taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

The deficiency or payment, therefore, must be attributable to an error or delay by an officer or employee of the IRS in the performance of a ministerial act.  Id.

Temporary regulations interpreting section 6404(e) define the term "ministerial act" as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place."  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[3]  A decision concerning the proper application of Federal tax law, or other Federal or State law, is not a ministerial act.  Id.

Congress intended for the Commissioner to abate interest "where failure to abate interest would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.  Yet, Congress intended that abatement would

---

[3] Final regulations under sec. 6404, issued in 1998 and generally applicable to interest accruing on deficiencies or payments of tax for taxable years beginning after July 30, 1996, provide the same definition of ministerial act.  Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

be used sparingly, and it did not intend that abatement "be used routinely to avoid payment of interest." Id.

Petitioner currently argues that his interest should be abated because he counted on receiving a tax "credit" of $5,717 from 1983 toward the payment of his 1980 tax deficiency in accordance with written and oral advice he received from "several" IRS employees prior to filing a petition in the Tax Court. He states now that he would have returned the $6,330 check, which he at one time claimed he did not receive, but for the "erroneous" advice given to him.

Petitioner's statement of the facts in his case has evolved to its present form. From October 1989 until April of 1993, petitioner represented to respondent that he had not received the $6,330 refund he had requested on Form 1045. After signing a decision document agreeing that there were deficiencies in his Federal income taxes for 1980 and 1983, he formulated a new position. His new position is that it was the fault of the IRS that he received the $6,330 refund "in error". Furthermore, he now states that he sought a redetermination of his deficiencies only because several persons at IRS told him that he had a tax "credit" of $5,717 that would be deducted from the $6,330 refund if he lost his case in Court.

Petitioner has presented no evidence of the "advice" he claims he received from IRS employees, other than his own

testimony.  He has not even identified the employees who allegedly gave him the advice.  But any advice given to him by IRS employees, whether accurate or inaccurate, would be a product of the legal or administrative judgment of the person giving the advice.  Therefore, the oral advice petitioner testified he received and relied upon does not constitute a ministerial act.  Moreover, petitioner should have known the "advice" to be erroneous in April 1993.  That was when he signed the decision document agreeing that he had net tax payments for 1983 of $5,717 on a tax deficiency to be assessed in the amount of $5,717, and a deficiency in income tax due for 1980 of $6,330.

Petitioner's present request for a "refund" of interest from 1993 forward conflicts with the evidence of his actual knowledge or reason to know that he was entitled to neither a $5,717 refund for 1983 nor a $5,717 tax "credit" from 1983 to 1980.

In sum, respondent's refusal to abate interest was not an abuse of discretion.  We have considered all other arguments advanced by petitioner and, to the extent not discussed above, have found those arguments to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.